FILED
May 11, 2026
10:29 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Wigelia White | Docket No. 2025-80-0023 |
| v. | State File No. 71161-2024 |
| Federal Express Corp., et al. | |
| Appeal from the Court of Workers' Compensation Claims Allen Phillips, Judge | |

---

### Affirmed and Certified as Final

---

The employee alleged she injured her low back, left hip, and related anatomy while moving heavy mail bags at work. At trial, the employer argued that the employee failed to provide adequate notice of any alleged work-related accident and failed to come forward with sufficient proof that her condition was primarily caused by that alleged incident. The trial court agreed with the employer on both counts and denied the employee's claim, and the employee has appealed. Having carefully reviewed the record, we affirm the trial court's order and certify it as final for purposes of any further appeal.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Wigelia White, employee-appellant, pro se

Joseph B. Baker, Memphis, Tennessee, for the employer-appellee, Federal Express Corp.

### Factual and Procedural Background

Wigelia White ("Employee") worked for Federal Express Corp. ("Employer") as a materials handler. On or about August 7, 2024, Employee allegedly felt pain in her left lower back, hip, thigh, and leg while moving heavy mail bags onto a conveyor. Employee did not provide written notice of the alleged accident on the date it occurred and continued working for several weeks before seeking medical care.[1]

---

[1] Employee later testified that she informed her supervisor of this incident on the same night it occurred, but her supervisor testified she received no such report.

On August 23, Employee went to DeSoto Family Medical Center ("DeSoto") with complaints of "[l]eft leg pain x 1 week." The record of that visit also documents "myalgias left lower back/buttock and radiates around to front of thigh." During that visit, Employee explained that she "stands frequently at work on concrete," but she did not report any specific work-related accident. The nurse practitioner who examined Employee diagnosed left-sided sciatica and prescribed a two-week course of nonsteroidal anti-inflammatory medication. No other treatment was recommended at that time.

On September 5, 2024, Employee returned to DeSoto complaining of left leg pain. Upon finding an ulceration on Employee's left buttock, the nurse practitioner diagnosed a "[p]ressure injury" and prescribed a topical cream. There was no discussion during this visit of a work-related accident in August.

Approximately one week later, on September 13, Employee was seen at OrthoSouth Briarcrest ("OrthoSouth"). On the Patient Registration form for that visit, Employee did not indicate she was there for treatment of a work-related injury.[2] She provided a history of "acute low back pain" that "has been present for months." Employee indicated that her symptoms were aggravated by "standing for prolonged periods," but there was no reference to any specific work-related accident. Employee also reported "a 3-week history of pain in her left hip girdle with some radiation down the left leg." The provider noted that she was "not describing back pain." Employee also stated that she "works nights at [Employer] sorting mail and feels like this . . . aggravated her pain." Yet, the report reflects "[n]o reported work injury."

The OrthoSouth provider ordered low back x-rays, which showed "[d]isc space narrowing at L3-4 and L4-5," as well as "Grade 1 spondylolisthesis at L4-5."[3] As a result, the physician commented that "[w]hile [Employee] does have underlying degenerative changes of the lumbar spine including small L4-5 spondylolisthesis, I cannot reproduce any symptoms with examination of her spine." He prescribed medications and recommended physical therapy.

On September 20, Employee reported to work wearing a neck brace. Due to company policy, which prohibited an employee from wearing any kind of brace while on duty unless prescribed by a physician, Employee was asked to complete a written statement addressing the neck brace. On that statement, Employee wrote, "I am not reporting an injury." At trial, Employee testified she felt coerced into writing her statement.

---

[2] The Patient Registration form asked for the "Type of Injury" and included boxes to check for "Work," "Auto," "Sports," or "Other." No box was checked. It also asked for the "Injury Date," but this was left blank as well.

[3] It is unclear from our review of the September 13 OrthoSouth report the identity of the physician who examined Employee. The registration form indicates she was to be seen by Dr. R. Jeffrey Cole, but the report itself was electronically signed by Dr. David Dowling as "Primary Provider."

Employee's supervisor denied that allegation, testifying that no one coerced Employee into making any such statement.

On September 23, Employee sent Employer an email asking to "modify" her statement "from not filing a work claim to filing a work claim." The recipient of this email forwarded it to Employee's supervisor and Employer's safety manager with instructions to "have her provide a detailed [s]tatement." As a result, Employee completed a new written statement indicating that, at some point in August (she did not recall a specific date), she was "assigned to work bag stands." Employee further indicated that, despite receiving assistance from a colleague, she injured her low back while "pulling some of the bags." She again asserted that she "reported the injury the same day," but could not remember the date of this alleged accident.

Following receipt of Employee's supplemental statement, Employer provided a panel of physicians, from which Employee selected Dr. James E. Escue. Employee first saw Dr. Escue on September 27, the same day she signed the panel. According to Dr. Escue's initial report, Employee complained of low back pain "while lifting heavy boxes at work." Following his review of x-rays and his physical examination, Dr. Escue diagnosed "[i]ntervertebral disc disorders with radiculopathy" in the lumbar spine. In his treatment plan, Dr. Escue stated, "Employee developed symptoms while performing duties within [the] scope of [her] employment which contributed greater than 50% to the need for medical treatment."

Thereafter, Employer sent Dr. Escue medical records from other medical providers for his review, including reports from DeSoto and OrthoSouth. After reviewing these records, Dr. Escue responded to a medical questionnaire from Employer's counsel on February 4, 2025, on which he noted his review of "newly provided documentation for undisclosed prior treatment [that] indicates degenerative disc disease processes that have been present for months." He then concluded that "the symptoms reported on September 27, 2024 are not more than 50% related to the alleged work incident."

Meanwhile, in December 2024, Employee sought treatment with Dr. Brian K. Henry, a chiropractor. Dr. Henry's reports note Employee's complaints of low back pain radiating down her left leg. He continued to treat Employee on multiple occasions, and, on March 1, 2025, Employee underwent a lumbar MRI ordered by Dr. Henry, which revealed bilateral "[m]oderate to severe canal stenosis" and "foraminal stenosis" at several levels of the lumbar spine. Dr. Henry completed two Standard Form Medical Reports ("Form C-32s"). The first, dated February 14, 2025, indicated Employee had sustained a 30% "whole body impairment" due to "lifting and pulling heavy bags" at work. On the second Form C-32, dated November 4, 2025, Dr. Henry stated that Employee's permanent impairment did *not* involve an aggravation of a preexisting condition.

3

Employer objected to Dr. Henry's first Form C-32 and, in August 2025, deposed him. During his deposition, Dr. Henry acknowledged that diagnostic scans indicated degenerative conditions in the lumbar spine, which he described as "wear and tear" that accompanies aging. Dr. Henry also commented that the lumbar MRI indicated both degenerative changes and a disc protrusion at L5-S1. He further noted that, as of the date of the deposition, Employee was "steadily progressing and getting better." As a result, Dr. Henry did not feel that Employee had reached maximum medical improvement as that term is defined in the AMA's *Guides to the Evaluation of Permanent Impairment*, 6th edition. He acknowledged that, other than a "couple days" off work, he had not completely restricted her from working but had placed certain weight limits on her lifting capacity. Dr. Henry also acknowledged that Employee did not inform him of any low back pain that predated the alleged work accident in August 2024 despite records from DeSoto in 2023 documenting such complaints.

With respect to the records from DeSoto and OrthoSouth showing the lack of any history of a work-related accident in August 2024, Dr. Henry testified that Employee told him she did not trust any medical providers associated with Employer and, as a result, she did not report any work-related accident to those providers. He later testified, however, that he "[doesn't] know why she didn't tell them it was work [related]." During the re-direct examination by Employee, Dr. Henry agreed that she expressed concern that the medical providers at OrthoSouth would "refuse" to see her if she told them she had suffered a work-related accident.

Finally, with respect to his impairment rating, Dr. Henry acknowledged that he did not utilize the AMA's *Guides to the Evaluation of Permanent Impairment*, 6th edition, to assess permanent impairment. He explained that "[c]hiropractic is a little different." When asked how he calculated his rating, he stated, "I based it off [of] our findings and what we had seen in the past." He then stated, "I just came up with a number I thought . . . would be fair to both sides." Finally, when Dr. Henry was asked whether the work accident she had described contributed more than fifty percent in causing her permanent impairment, he responded, "I'm not for sure."

The trial in this case occurred on February 17, 2026, with Employee and her supervisor offering in-person testimony. Additionally, the parties submitted twelve documentary exhibits, including the depositions of Drs. Escue and Henry, as well as the Form C-32s completed by Dr. Henry. During her testimony, Employee described the alleged work accident in August 2024, and she confirmed that she remains employed by Employer on a part-time basis, which is the same status she held as of the date of the alleged accident. She asserted an entitlement to temporary disability benefits and medical benefits, and she asked the court to review and consider Dr. Henry's testimony and evidence provided on the Form C-32s.

4

On February 24, 2026, the court entered a compensation order denying Employee's claim for benefits. Citing the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel's decision in *Ernstes v. Printpack, Inc.*, No. W2023-00863-SC-R3-WC, 2024 Tenn. LEXIS 1, at *13-14 (Tenn. Workers' Comp. Panel Jan. 2, 2024), the court reasoned that Employee failed to provide proper notice of an alleged work accident in that she: (1) did not provide Employer with written notice within fifteen days of the alleged accident; (2) did not prove by a preponderance of the evidence that Employer had actual knowledge of the alleged August 7 incident; and (3) did not offer any reasonable excuse for her failure to provide proper notice. In addition, the court made an alternative finding that, even if Employee had provided proper notice, she did not come forward with sufficient expert medical proof to support a finding that the alleged work accident contributed more than fifty percent in causing any degree of disability or the need for medical treatment. The court therefore denied her claim for benefits, and Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

In her notice of appeal and brief, Employee asserts the trial court erred by misapplying legal standards, failing to properly evaluate the expert medical proof, and mischaracterizing testimony. She further argues that she provided proper notice of the August 2024 accident when she verbally informed her supervisor of the incident on the date it occurred. Finally, she maintains that Dr. Escue's original causation opinion should be given greater weight, especially in light of Dr. Henry's opinions.

*Notice*

Tennessee Code Annotated section 50-6-201(a) requires an employee involved in a work-related accident to provide his or her employer "written notice of the injury . . . within fifteen (15) days after the occurrence of the accident." Tenn. Code Ann. § 50-6-201(a). There are two exceptions to this general rule. First, the written notice requirement is excused if the employer had "actual knowledge" of the accident. *Id.* Second, the employee may offer sufficient evidence that he or she had a "reasonable excuse for failure to give the notice." *Id.* As we have explained previously,

> In considering whether the employee has shown by a preponderance of the evidence a reasonable excuse, a court can consider, among other things: (1) the employer's actual knowledge of the employee's injury, (2) lack of prejudice to the employer by an excusal of the notice requirement, and (3) the excuse or inability of the employee to timely notify the employer. However, as previously stated by the Tennessee Supreme Court, "[l]ack of prejudice alone would not be sufficient to excuse notice." *Aluminum Co. of Am. v. Rogers*, 364 S.W.2d 358, 361 (Tenn. 1962).

*Ernstes v. Printpack, Inc.*, No. 2020-07-0617, 2023 TN Wrk. Comp. App. Bd. LEXIS 25, at *34-35 (Tenn. Workers' Comp. App. Bd. June 6, 2023) (internal citation omitted), *aff'd Ernstes v. Printpack, Inc.*, No. W2023-00863-SC-R3-WC, 2024 Tenn. LEXIS 1 (Tenn. Workers' Comp. Panel Jan. 2, 2024).

The record in this case supports the trial court's decision on the notice issue. Employee acknowledged she did not provide written notice of the August 7 incident until September 23, well past the fifteen-day notice period. Furthermore, the trial court accredited the testimony of Employer's supervisor, who denied receiving any verbal report of a work accident on August 7 or thereafter. This testimony was consistent with Employee's explanation that she did not believe she should inform the medical providers she saw in August and early September that she had suffered a work-related injury. It is well established that an appeals court gives deference to a trial court's determinations related to the credibility of witnesses. *Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014). Here, we find nothing to suggest the trial court erred in its assessment of either witness's testimony.

Finally, we agree with the trial court that Employee offered no reasonable excuse for her failure to provide proper notice. First, Employee testified she told her supervisor immediately when and how the work-related injury occurred, but she later suggested undue pressure or coercion prevented her from reporting a work-related injury. Second, Employee alleged she was coerced into completing a written statement denying the occurrence of a work accident, yet she subsequently was allowed to amend her statement to reflect the "filing [of] a work claim." Third, Employer's representative strongly denied

receiving any verbal report of a work accident, and it was not until well after the statutory notice period passed that Employee sought to amend her written statement. Fourth, upon receipt of Employee's amended report on September 23, Employer promptly provided a panel of physicians and authorized an appointment with Employee's selection on the day she signed the panel. This unrefuted evidence is inconsistent with Employee's position that Employer coerced her into not reporting a work-related accident.

Employee argues in her reply brief that her failure to give timely notice of the accident should be excused because she "had not yet fully understood the severity or nature of her condition" at the time she submitted the September 20 statement indicating she was not reporting a work injury. Yet, as we have noted previously, in circumstances where an alleged work injury was caused by a sudden, traumatic workplace accident, the notice requirement applies to the occurrence of the accident, not the manifestation of the injury. *See Yeoman v. Transwood Logistics, Inc.*, No. 2024-30-2931, 2025 TN Wrk. Comp. App. Bd. LEXIS 57, at *8-9 (Tenn. Workers' Comp. App. Bd. Nov. 13, 2025) ("[A]n employee's understanding, or lack thereof, of the seriousness of the injury does not excuse the notice requirement in circumstances where [the employee] was involved in a sudden, traumatic accident at work."). In sum, we conclude the preponderance of the evidence supports the trial court's credibility determinations and its finding that Employee did not provide proper notice of her alleged work-related accident.

*Arising Primarily Out Of*

The trial court found, in the alternative, that even if proper notice had been given, Employee did not offer sufficient proof that her alleged disability and need for medical treatment arose primarily out of the work accident. We agree.

Tennessee Code Annotated section 50-6-102(12) requires an employee to prove by a preponderance of the evidence that the work accident "contributed more than fifty percent (50%) in causing . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(12)(C). Moreover, the opinion of a panel-selected physician "shall be presumed correct on the issue of causation." Tenn. Code Ann. § 50-6-102(12)(E). Here, Dr. Escue, the panel-selected physician, ultimately opined that "the symptoms reported on September 27, 2024 are not more than 50% related to the alleged work incident." That opinion was entitled to a presumption of correctness that could only be overcome by a preponderance of the expert medical evidence. Yet, Dr. Henry was unable to explain the rationale for his opinions on causation and, ultimately, admitted he was "not for sure" whether the alleged work accident had contributed more than fifty percent in causing Employee's disablement or need for treatment.[4] The trial court properly

---

[4] Given our holding affirming the trial court's determination regarding lack of notice, we need not address whether a chiropractor is qualified to offer opinions on causation within a reasonable degree of medical certainty as required by Tennessee Code Annotated section 50-6-102(12)(D).

considered all expert proof and concluded Employee had not met her burden.  We find the preponderance of the evidence supports the trial court's determination.

## Conclusion

For the foregoing reasons, we affirm the trial court's order in all respects and certify it as final for purposes of further appeal.  Costs on appeal are taxed to Employee.